UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCELIA V.,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No.: 25-cv-1830-SBC<br>**ORDER AFFIRMING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |

On July 17, 2025, Plaintiff Arcelia V.[1] initiated this action against Defendant Commissioner of Social Security for judicial review under 42 U.S.C. § 405(g) of the denial of her applications for disability insurance and supplemental security income benefits. (Dkt. No. 1.) Defendant filed the Administrative Record on September 15, 2025. (Dkt. Nos. 6-8.) Plaintiff filed a merits brief on October 13, 2025. (Dkt. No. 10.) Defendant filed a responsive brief on January 23, 2026. (Dkt. No. 15.) Plaintiff did not file a reply.

[1] The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules. *See* Civ LR 7.1(e)(6)(b).

For the following reasons, the final decision of the Commissioner is **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in 1976 and is currently 49 years of age. (AR 344.)[2] She completed high school and worked as a housecleaner until the pandemic in 2020. (AR 72-73.) On or about December 22, 2021 and January 20, 2022, Plaintiff filed applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"), respectively. (AR 321-27, 330-36.) Plaintiff alleged that she had been disabled since June 1, 2021, due to a broken tailbone, hyperthyroidism, herniated discs, high blood pressure, and depression. (AR 344, 348.) Plaintiff's applications were denied on initial review and again on reconsideration. (AR 185-89, 192-98.)

Administrative Law Judge ("ALJ") Andrew Verne conducted an administrative hearing on March 12, 2024. (AR 62.) On September 20, 2024, the ALJ issued a decision concluding that Plaintiff had not been under a disability from June 1, 2021, through the date of the decision. (AR 38-51.) Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the request on June 4, 2025. (AR 1-6.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

## II. LEGAL STANDARDS

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited, however, and a decision denying benefits will be set aside "only if it is not supported by substantial evidence or is based on legal error."

---

[2] "AR" refers to the Administrative Record filed on September 15, 2025. (Dkt. Nos. 6-8.) The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

*Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (citations omitted). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for . . . evidentiary sufficiency [under the substantial evidence standard] is not high."). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. *Id.*

## III. DISCUSSION

### A. <u>ALJ's Decision</u>

The Commissioner employs a five-step analysis outlined in 20 C.F.R. §§ 404.1520 and 416.920 in rendering a decision on a claimant's claim. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps). In this case, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since June 1, 2021, the alleged onset date. (AR 41.) At step two, the ALJ found that Plaintiff's severe impairments consisted of multinodular goiter, hypertension, fibromyalgia, coccygeal fracture, hyperthyroidism, lumber spondylosis, and depressive disorder. (*Id.*) The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed

impairment. (AR 41-43.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform:

> [L]ight work as defined in [20 C.F.R. §§ 404.1567(b) and 416.967(b)] except with lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting 6 hours in an 8-hour workday, standing and/or walking 6 hours in an 8-hour workday with an option to change position every 30 minutes at their work station . . . ; **understanding, remembering, and carrying out simple, routine repetitive tasks with breaks every two hours**; no interaction with the general public and occasional work-related, non-personal, non-social interactions with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product; cannot perform highly time pressured tasks such that the claimant is limited to generally goal-oriented work, not time sensitive strict production quotas (that is, production rate pace work with strict by the minute or by the hour production quotas that are frequently and/or constantly monitored by supervisors or that are fast paced); and limited to a low-stress environment where there are few workplace changes (i.e., the claimant would not have to switch from task to task) and the claimant has minimal decision-making capability (i.e., she would be unable to exercise substantial discretion in carrying out work activities).

(AR 43-44 [emphasis added].)

At step four, the ALJ found that Plaintiff had no past relevant work because her prior earnings did not rise to the level of substantial gainful activity. (AR 49.) The ALJ determined at step five that Plaintiff could perform the requirements of the representative occupations of routing clerk, small products assembler II, and inspector hand packager. (AR 49-50.) Therefore, the ALJ concluded that Plaintiff had not been under a disability from June 1, 2021, through the date of the decision. (AR 50.)

## B. Mental RFC Determination

Plaintiff first contends that the ALJ's formulation of her mental RFC failed to include a key vocational limitation. (Pl.'s Br. 6-9, Dkt. No. 10.) Specifically, she argues that the ALJ erred by omitting that Plaintiff is "incapable" of "understanding, remembering, or carrying out instructions" from her RFC. (*Id.* at 7.)

///

**1. Residual functional capacity**

"Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007). Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, . . . mean[ing] 8 hours per day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphases omitted). In formulating the RFC, the ALJ must account for all the claimant's medically determinable impairments, including those that are not severe, and evaluate "all of the relevant medical and other evidence." *See* 20 C.F.R. § 404.1545(a)(2)-(3).

"It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1546(c). The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). The ALJ's RFC assessment should be affirmed if the ALJ has applied the proper legal standard and his decision is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ errs, however, when he ignores "significant and probative evidence in the record" and provides an incomplete RFC determination. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's limitations is defective").

**2. Dr. Joseph's opinion**

Plaintiff's argument rests upon the opinion of Denise Joseph, M.D., who conducted a mental evaluation of Plaintiff on March 11, 2023. (AR 814-17.) Dr. Joseph provided the following functional assessment:

> **The claimant can understand, remember and carry out instructions**, follow a conversation and cannot think abstractly and apply reason when asked to interpret proverbs. The claimant's short term memory was intact as evidenced by accurate recall of three of three words and six of six digits forward immediately. Long term memory was intact as evidenced by the recall of the three words after a few minutes and the recall of a personal memory. Mental flexibility was not intact as evidenced by no recall of six numbers on Digit Span backward, spelling "world" correctly forward not backwards and not exhibiting a relatively strong fund of knowledge. The claimant was able to sustain concentration and show persistence with simple tasks for a 5 minute period of time and multistep tasks for a 5 minute period of time.[3] The claimant was distractible and fatigued as evidenced by the performance on the Serial 7s task. The claimant has minimal social interactions, mostly with mother, aunt, grandmother and son. The claimant reported no difficulty with social interactions in the past, a history of interacting well with co-workers and supervisors and responding adequately to workplace pressures. The claimant now has moderate impairment adapting to social interactions, moderate impairment to work related pressures, and moderate impairment interacting with supervisors.

(AR 817 [emphasis added].)

**3. ALJ's assessment of Dr. Joseph's opinion**

The ALJ assessed Dr. Joseph's opinion as follows:

> Denise Joseph, M.D., a consultative psychiatrist, examined the claimant on March 11, 2023, and diagnosed major depression, moderate, and generalized anxiety disorder, and **she opined that the claimant could understand, remember, and carry out instructions**; she could sustain concentration,

---

[3] Dr. Joseph noted elsewhere in her report that Plaintiff can sustain concentration and show persistence for up to 20 to 30 minutes of mindful mediation and YouTube videos. (AR 816.)

> persistence and pace for up to 30 minutes; she would have moderate impairment in social interactions and interacting with supervisors; and she would have moderate impairment in adapting to work-related pressures. Dr. Joseph's opinion is persuasive as to limitations in social functioning, concentrating, persisting, or maintaining pace, and in adapting, as these limitations are supported by examination findings of depressed and anxious mood, cooperative but fatigued and tearful behavior, and diminished concentration but with normal thought content, insight, and judgment. **However, [her] opinion that the claimant could understand, remember, and carry out instructions is not supported by [her] own examination findings or consistent with the earlier psychological report in March 2022. During the March 2022 evaluation, the claimant could repeat three words immediately but was unable to recall them five minutes later[], and she was unable to repeat six digits forward or backward. While Dr. Joseph noted some improvement of her memory, she continued to have difficulty accurately recalling 6 digits backwards. Her fund of knowledge also appeared more impaired (could not recall a current world event, name the current governor, or name any of the five states bordering California).**

(AR 48 [emphases added; exhibit references omitted].)

**4. Analysis**

Plaintiff contends that by finding not persuasive Dr. Joseph's opinion that she could "understand, remember, and carry out instructions," the ALJ erred by not including that she was "incapable" of understanding, remembering, and carrying out instructions in the RFC or in his corresponding hypothetical questions to the vocational expert. (Pl.'s Br. 7-8, Dkt. No. 10.) Defendant counters that the ALJ's finding that the portion of Dr. Joseph's opinion in which the doctor found Plaintiff "could understand, remember, and carry out instructions" was unpersuasive indicated that the ALJ believed Plaintiff had at least *some* limitation in this area, rather than *no* limitation as found by Dr. Joseph. (Def.'s Resp. 4-5, Dkt. No. 15.)

The Court agrees with Defendant. Although Plaintiff claims an inconsistency between the ALJ's finding and the RFC formulated by the ALJ, the alleged inconsistency

is based on a mischaracterization of the ALJ's finding. The ALJ did not find that Plaintiff had *no ability* to understand, remember, and carry out instructions; rather, the ALJ found that Plaintiff had some limitation in doing these tasks. The RFC formulated by the ALJ includes limitations to Plaintiff's ability to understand, remember, and carry out instructions; specifically, that she could perform only simple, routine repetitive tasks with breaks every two hours. (AR 44.)

This interpretation is supported elsewhere in the ALJ's decision. With respect to Plaintiff's ability to understand, remember, and apply information, the ALJ stated:

> **In understanding, remembering, or applying information, the claimant has a moderate limitation.** During a consultative psychological evaluation in March 2022, the claimant was able to repeat three words immediately but was unable to recall them five minutes later, and was unable to repeat six digits forward or backward. She also had difficulty with concentration. However, intellectual capacity appeared average, and fund of knowledge was intact. During a second consultative psychological evaluation in March 2023,[4] she had somewhat improved memory (recalled three words immediately and after delay and recalled six digits forward but none backward) but fund of knowledge remained impaired, and concentration was diminished. Nevertheless, the claimant was able to manage finances, drive, and shop, and her pain management physician repeatedly noted a normal cognition. **Accordingly, the undersigned finds the claimant has no more than moderate limitations in understanding, remembering, or applying information.**

(AR 42 [emphases added; exhibit references omitted].) Plaintiff has failed to demonstrate that the ALJ erred with respect to his determination of her mental RFC.

Moreover, the ALJ's finding that Plaintiff had a moderate limitation in understanding, remembering, or applying information is supported by substantial evidence in the record. In his March 18, 2022 consultative examination report, Dr. Montez

[4] This refers to Dr. Joseph's opinion presently at issue before the Court.

McCarthy, a psychologist, found that Plaintiff had no limitation in her ability to understand, remember, and perform simple one or two-step written and oral instructions, and mild to moderate limitation in her ability to understand, remember, and perform detailed and complex instructions. (AR 506-07.) Additionally, the prior administrative medical findings ("PAMFs") at both the initial and reconsideration levels indicate that Plaintiff was "not significantly limited" in her ability to understand and remember very short and simple instructions but "moderately limited" in the ability to understand and remember detailed instructions. (AR 96-97, 148.) Both PAMFs also indicate that Plaintiff "is capable of understanding and remembering simple instructions and procedures" and "can maintain concentration, pace and persistence for simple 1-2 step work tasks." *See* AR 100 (mental RFC opinion dated April 17, 2022 by Coleman Cosgrove, D.O., on initial determination); AR 150-51 (mental RFC opinion dated March 28, 2023 by Pamela Hawkins, Ph.D. on reconsideration).

Accordingly, Plaintiff's first argument is without merit.

**C. <u>ALJ's Finding Regarding Job Numbers</u>**

Next, Plaintiff argues that 23,400 jobs does not constitute a significant number of jobs. (Pl.'s Br. 9-10, Dkt. No. 10.) Defendant contends that 23,400 does constitute a significant number at step five. (Def.'s Resp. 7-10, Dkt. No. 15.) Again, the Court agrees with Defendant.

**1. ALJ's step five determination**

At step five, the ALJ found that Plaintiff's ability to perform the full range of light work was impeded by her limitations. (AR 50.) To determine the extent to which Plaintiff's limitations eroded the unskilled light occupational base, the ALJ presented a hypothetical to the vocational expert ("VE"), who testified at Plaintiff's administrative hearing, based on Plaintiff's RFC. (AR 77-79.) The VE testified that Plaintiff could perform the jobs of routing clerk, small products assembler II, and inspector and hand packager. (AR 79.) The VE eroded the numbers of each of these positions by 80 percent to account for the

limitations contained in Plaintiff's RFC, and thus found 10,000, 8,000, and 5,400 jobs in the national economy for these positions, respectively, for a total of 23,400 jobs. (AR 79-80.) The ALJ adopted the VE's testimony. (AR 50.)

**2. "Significant number" of jobs**

The Commissioner must establish at step five that there are a significant number of jobs in the national economy that the claimant can do. *Tackett*, 180 F.3d at 1099. The Ninth Circuit has not created a "bright-line rule" for what constitutes a "significant number" of jobs. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). However, "a comparison to other cases is instructive." *Id.* In *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519 (9th Cir. 2014), the Ninth Circuit upheld the ALJ's finding that 25,000 jobs constituted a sufficient number but stated that it was a "close call." *Id.* at 529. The Ninth Circuit provided further guidance in *Randazzo v. Berryhill*, 725 F. App'x 446 (9th Cir. 2017). There, the circuit court determined that "the remaining 10,000 electrical accessories assembler jobs found by the expert may not amount to a significant number of jobs in the national economy." *Id.* at 448; *see also De Rivera v. Berryhill*, 710 F. App'x 768, 769 (9th Cir. 2018) ("it is not clear that [5,000 national jobs] are sufficient.").

**3. Analysis**

Plaintiff, referring to *Gutierrez*, argues that "[i]f 25,000 presented a close call in 2014, 23,400 jobs present no such 'close call' today—it is not a significant number of jobs when adjusted for population increases over the last 11 years." (Pl.'s Br. 9, Dkt. No. 10.) She does not cite any further authority to support this argument. Defendant cites numerous cases, decided since *Gutierrez*, to support the argument that 23,400 jobs constitutes a significant number. (Def.'s Resp. 8 n.3, 9, Dkt. No. 15.) The Court has reviewed these and other cases, and based on its review thereof, finds that the 23,400 jobs identified by the ALJ here constitute a significant number of jobs in the national economy. *See, e.g., Westling v. Comm'r Soc. Sec.*, No. 1:25-cv-00057-JLT-GSA, 2026 WL 2150753, at *7 (E.D. Cal. July 27, 2026) ("[I]t is worth noting that a number of courts throughout the Ninth

Circuit have concluded that 21,000 or fewer constitute a significant number of jobs in the national economy."); *Timothy L. v. Bisignano*, Case No. 8:24-cv-01893-SP, 2026 WL 866171, at *7 (C.D. Cal. Mar. 27, 2026) (finding 21,100 total jobs constitutes a significant number); *Morgan v. Comm'r Soc. Sec.*, Case No. 2:24-cv-00340-CSK, 2025 WL 832101, at *4 (E.D. Cal. Mar. 17, 2025) (deciding that 21,215 jobs in the national economy is significant); *Jean B. v. O'Malley*, Case No. 8:23-cv-01850-MAA, 2024 WL 6969026, at *6 (C.D. Cal. Oct. 25, 2024) (finding 21,000 jobs constitutes a significant number); *Elizabeth M. v. Saul*, Case No. ED CV 20-00819-DFM, 2021 WL 1060232, at *2 (E.D. Cal. Mar. 19, 2021) ("Given the legal landscape, the Court finds that, on balance, the existence of 21,000 jobs in the national economy to be sufficient."); *Ronquillo v. Saul*, Case No.: 1:19-cv-1665 JLT, 2021 WL 614637, at *8 (E.D. Cal. Feb. 17, 2021) (finding 24,000 jobs in the national economy was a significant number); *Anna F. v. Saul*, Case No. ED CV 19-511-SP, 2020 WL 7024924, at *6 (C.D. Cal. Nov. 30, 2020) (determining 21,100 jobs to be a significant number and noting that the "the difference between 21,100 jobs and 25,000 jobs does not seem material such that it would shift the close call the other way").

Therefore, Plaintiff has not demonstrated that the ALJ erred in his step five determination.

## IV. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. The Clerk is directed to issue a judgment and close this case.

**IT IS SO ORDERED**.

Dated: August 28, 2026

Hon. Steve B. Chu
United States Magistrate Judge